**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GERALD BANYONG<br>2604 Ballston Court<br>Bowie, Maryland 20721<br>(Prince George's County)<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITY HEALTHCARE<br>1220 12th Street, SE, Suite 120<br>Washington, DC 20003<br><br>　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: Case No.<br>:<br>:<br>:<br>: JURY TRIAL DEMANDED<br>:<br>:<br>: |

## COMPLAINT AND JURY DEMAND

Plaintiff Gerald Banyong ("Plaintiff" or "Mr. Banyong") brings suit against his former employer, Unity Healthcare ("Defendant" or "Unity Healthcare"), under the District of Columbia Wage Payment and Collection Act and the Fair Labor Standards Act.

1

## JURISDICTION AND VENUE

1. The United States District Court for the District of the District of Columbia has jurisdiction of the instant litigation based upon 28 U.S.C. § 1331 because of federal question jurisdiction due to Mr. Banyong's claims under the Fair Labor Standards Act.

2. The United States District Court has supplemental jurisdiction over the instant litigation based upon 28 U.S.C. § 1367.

3. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because it is the judicial district within which Mr. Banyong was employed when his rights under the FLSA were violated by his former employer, Unity Healthcare. Therefore, a substantial part of the events or omissions giving rise to his claims occurred within the jurisdiction of the United States District Court for the District of the District of Columbia.

## PARTIES

4. Plaintiff Gerald Banyong ("Mr. Banyong") is a natural person residing in Bowie, Maryland who worked as a Registered Charge Nurse for the Defendant, Unity Healthcare.

5. Defendant Unity Healthcare ("Unity") is a staffing agency for medical services.

6. Unity held the contract to provide medical services at the District of Columbia jail, which is the location at which Mr. Banyong worked.

7. Unity Healthcare is headquartered in the District of Columbia and regularly conducts business within the District of Columbia.

## FACTS COMMON TO ALL CLAIMS

8. Mr. Banyong worked for Unity from July 28, 2015 until February 9, 2017.

9. Mr. Banyong was hired as a charge nurse and worked an average of 120 hours every two weeks, or approximately 60 hours per week.

10. Mr. Banyong's regular hours were from 11 PM to 7 AM, the night shift.

11. Mr. Banyong, on Saturdays and Sundays, worked double shifts every other weekend from 3 PM to 7 AM.

12. Mr. Banyong's pay rate at the time of his termination was $37.79. This pay rate became effective in 2016.

13. In 2016 Mr. Banyong's pay rate was $36.69.

14. Because Mr. Banyong worked the night shift he was entitled to a night differential of $2.50 per hour.

15. Throughout his employment, Mr. Banyong received his regular pay and night differential pay, but was never paid the additional $2.50 per hour he was entitled to for working as a Charge Nurse.

16. Upon information and belief Mr. Banyong was the only Charge Nurse not being paid this additional $2.50 per hour.

17. Mr. Banyong is aware of the additional $2.50 per hour paid to other Charge Nurses based upon conversations with other Charge Nurses, specifically Ben Mokam; Myther Matthews; and Janet Jackson.

18. Mr. Banyong brought up the issue of the additional Charge Nurse pay with his manager, Patricia Smith-Williams ("Ms. Smith-Williams").

19. Ms. Smith-Williams erroneously told Mr. Banyong that the Charge Nurse pay was included in his pay.

20. Mr. Banyong never actually received the additional pay.

21. Accordingly, Unity failed to pay Mr. Banyong the additional pay which he was owed.

22. The Charge Nurse is paid the additional $2.50 per hour because of additional duties performed beyond those of a regular registered nurse.

23. These additional duties include responsibility for overseeing the actions of the Registered Nurses when the Director of Nursing is not on-duty.

24. Additionally, Charge Nurses are responsible for staffing—making sure each shift has adequate staffing and managing the proper allocation of staff to shifts.

25. On or about October, 19 2016 Mr. Banyong requested a leave of absence to attend to his father in Cameroon who had become ill. He was informed this was not a problem and to work with the HR manager.

26. Mr. Banyong was granted Family Medical Leave Act leave for this purpose, and was approved for 16 weeks of leave pursuant to District of Columbia law, which made the end of his D.C. FMLA leave approximately February 8, 2017.

27. In November, there was a political uprising in Cameroon which caused travel and communication difficulties. Mr. Banyong attempted to contact HR but was unsuccessful and had to leave voicemails on several occasions outlining his difficulties and delay.

28. During November and December, Mr. Banyong attempted to communicate with HR. Mr. Banyong was able to speak with his supervisor, Director of Nursing, Ms. Bianca Thompson ("Ms. Thompson"), Mr. Banyong's direct supervisor, and she indicated that there was no problem with Mr. Banyong's extended stay in Cameroon. She specifically stated that "that you should take care of your father and I

will inform HR of the situation."

29. In January the political turmoil continued to make travel and communication difficult and Mr. Banyong was still caring for his father. He attempted to contact his supervisor once again by telephone and text message to advise her of the situation but he got no response.

30. In mid-February, Mr. Banyong was able to return and reported to Unity and met with Ms. Sidney Pearson ("Ms. Pearson") of Human Resources.

31. Ms. Pearson informed Mr. Banyong that he was terminated as of February 9, 2016 for failure to return to work after exhaustion of FMLA leave benefits, which Unity claimed were exhausted on December 21, 2016.

32. Ms. Pearson handed Mr. Banyong his termination letter, which stated that "Since you are leaving the employ of Unity Health Care in good standing, you are eligible to apply for any available Unity Health Care positions when you are able to work."

33. Ms. Pearson, during the termination meeting, after Mr. Banyong explained that he had contacted Ms. Thompson via telephone, asked for a written statement regarding what had occurred. She said we will then "get you back to work as soon as possible."

34. Mr. Banyong complied with this request and provided correspondence to Ms. Pearson explaining the events surrounding his stay in Cameroon to take care of his father and the political situation which prevented him from returning to the United States until the middle of February 2017.

35. Ms. Pearson had requested at the termination meeting that Mr. Banyong provide the correspondence by the following Wednesday.

36. On the following Tuesday, one day prior to the deadline, Mr. Banyong went to Ms. Pearson's office to hand deliver the correspondence. Ms.

Pearson was not in her office, she was out that day. Accordingly, Mr. Banyong left the correspondence with Ms. Pearson's staff assistant.

37. Ms. Pearson called Mr. Banyong the following week, because she was not in the office the whole of the week during which Mr. Banyong dropped off the correspondence.

38. Ms. Pearson said that she had provided the letter to her supervisor and that Mr. Banyong should "hold tight" and he would be "starting work soon."

39. Then, after another week passed, Mr. Banyong contacted his former supervisor Ms. Thompson, to let her know that he was back in the country. Ms. Thompson asked if he had reported to human resources, and he stated that he did.

40. Ms. Thompson told Mr. Banyong that "hopefully you will be starting work soon."

41. The above conversation between Ms. Thompson and Mr. Banyong occurred within the last week of February.

42. During the month of March, Mr. Banyong retained an attorney, Deyka Williams Spencer, Esq., to pursue his claims regarding failure to be paid the Charge Nurse differential, pursuant to the District of Columbia Wage Payment and Collection Law, which also led to underpayments of overtime under the Fair Labor Standards Act.

43. On March 22, 2017 Ms. Spencer wrote a demand letter to Unity outlining Mr. Banyong's claims under the District of Columbia Wage Payment and Collection Law and the Fair Labor Standards Act. This correspondence is attached as *Exhibit 1* to this Complaint and is incorporated by reference into this Complaint.

44. On March 31, 2017 Unity, in retaliation for Mr. Banyong raising his failure to be paid wages and overtime, sent Mr. Banyong correspondence stating that "your request for reinstatement to your position" had been denied and that "[t]he decision is that you will not be reinstated due to the extended period during which you did not communicate with Unity Health Care after your FML had expired."

45. Unity was aware that this statement was false, because Mr. Banyong had communicated with his supervisor Ms. Thompson.

46. Moreover, prior to Mr. Banyong asserting his rights to unpaid wages and overtime, Unity management had repeatedly reassured him that he would be reemployed. However, virtually immediately after asserting his rights through counsel, Unity definitively informed Mr. Banyong that he would not be considered for reinstatement.

47. This was despite the fact that Mr. Banyong was aware that there were openings available for Registered Nurses within the jail. Mr. Banyong would have accepted, at that time, any Registered Nurse position, even if it was not a Charge Nurse position, because he was unemployed and in need of a job.

48. The March 31, 2017 letter stating that Mr. Banyong would not be considered for reinstatement contradicts Unity's own correspondence to Mr. Banyong of February 9, 2017 which stated that he was "in good standing" and "eligible to apply for any available Unity Health Care positions."

## COUNT I
## DISTRICT OF COLUMBIA WAGE PAYMENT AND COLLECTION ACT

49. Mr. Banyong incorporates all of the preceding paragraphs in this Count I.

50. Unity violated the District of Columbia Wage Payment and Collection Act by not paying Mr. Banyong for monies he was owed.

51. The monies Mr. Banyong was owed specifically encompass the Charge Nurse pay differential of $2.50 per hour.

**WHEREFORE,** Mr. Banyong demands:

A. Quadruple damages under the Wage Payment and Collection Act for the unpaid wages.

B. Attorneys' Fees'

C. Costs; and

D. Any other relief which the District Court believes is proper and is available under the statute.

## COUNT II
## FAIR LABOR STANDARDS ACT

52. Mr. Banyong incorporates all of the preceding paragraphs in this Count II.

53. Because Mr. Banyong was not paid the proper amount of hourly compensation, specifically the fact that he was not paid the Charge Nurse differential, Mr. Banyong's overtime pay was calculated improperly.

54. Accordingly, Mr. Banyong was not paid all overtime which he was owed.

**WHEREFORE**, Mr. Banyong demands the following:

A. His unpaid overtime wages;

B. Liquidated damages for his unpaid overtime wages;

C. Attorneys' fees;

D. Costs; and

E. Any other relief from the District Court which is appropriate and available under the Fair Labor Standards Act.

## COUNT III
## RETALIATION UNDER THE DC WAGE ACT AND THE FLSA

55. Mr. Banyong incorporates all of the previous paragraphs in this Count III.

56. Mr. Banyong was discharged in good standing.

57. Unity assured Mr. Banyong that given the unfortunate circumstances regarding his termination, he would be rehired.

58. Only after Mr. Banyong, through counsel, raised issues regarding his legal entitlement to certain unpaid wages and overtime did Unity declare him ineligible for rehire, although open RN positions existed.

59. Accordingly, Mr. Banyong was without full-time employment from February of 2017 to November of 2017 and he lost significant wages as a result of this.

**WHEREFORE,** Mr. Banyong demands:

A. Back wages under the DC Wage Act and the FLSA including quadruple damages under the DC Wage Act and liquidated damages under the FLSA;

B. Costs;

C. Attorneys' fees; and

D. Any other relief which the Court finds appropriate which is available under the applicable statutes.

## JURY TRIAL DEMANDED

Mr. Banyong demands a jury trial for all issues proper to be so tried.

## RELIEF REQUESTED

Mr. Banyong demands all relief requested in this Complaint.

> Respectfully,
>
> \_\_\_\_/s/_____
> Robert J. Baror, Esq.
> THE BAROR LAW FIRM, LLC
> 7315 Wisconsin Avenue, Suite 400
> West Tower
> Bethesda, Maryland 20814
>
> *Counsel for Plaintiff,*
> *Gerald Banyong*

11